UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

RAS MUBARAK MUHAMMAD,

    Plaintiff,

v.

DEBORAH A. HICKEY, *et al.*,

    Defendants.

Civil Action No. 5:10-00247-JMH

**MEMORANDUM OPINION AND ORDER**

\*\*\*\*\* \*\*\*\*\* \*\*\*\*\* \*\*\*\*\*

Ras Mubarak Muhammad, who is confined in the Federal Medical Center-Lexington ("FMC-Lexington"), has filed a hybrid *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2241, and civil rights action under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 430 U.S. 388 (1971). Muhammad's claims stem from adverse decisions regarding his placement in a Residential Re-Entry Center ("RRC").[1]

Because this is a civil action being pursued by a prisoner against government officers, the Court now screens this matter under 28 U.S.C. § 1915A. This section requires the Court to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief.

*Pro se* complaints are held to less stringent standards than those drafted by attorneys. *See Wagenknect v. United States*, 533 F.3d 412, 415 (6th Cir. 2008). Moreover, at the screening phase, the allegations in a *pro se* complaint must be taken as true and construed in favor of the

---

[1] Federal prisoners near the end of their sentences are often placed in RRC's, previously known as Community Corrections Centers (CCC's) or "halfway houses" to live and work, under supervision, in order to facilitate their transition back into the community.

plaintiff. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). For the reasons set forth below, the Court will dismiss Muhammad's *Bivens* claims with prejudice and will dismiss without prejudice his related § 2241 claims demanding immediate RRC placement.

## NAMED DEFENDANTS/RESPONDENTS

The named defendants/respondents are: (1) J. R. Stephens, whom Muhammad identifies as the Warden of the Federal Correctional Institution located in Butner, North Carolina ("FCI-Butner"); (2) Deborah Hickey, Warden of FMC-Lexington; (3) the Bureau of Prisons ("BOP"); and (4) Harley "Lampins." As Muhammad probably intended to name Harley *Lappin*, Director of the BOP, as a defendant/respondent, the Clerk of the Court will be directed to correct the spelling of Lappin's name on the CM/ECF cover sheet.

## CLAIMS ASSERTED

Muhammad alleges that the BOP's decision either to deny him RRC placement, or to award him less RRC time than he demands, violates his right to due process of law guaranteed by the Fifth Amendment of the United States Constitution. He demands immediate placement in an RRC, and unspecified damages for the time he has spent in prison instead of the RRC. He also seeks unspecified damages to compensate him his emotional distress based on both the RRC denial, and his inability to see his family. Finally, Muhammad asserts a discrimination claim under the Americans with Disabilities Act of 1990, ("ADA"), 42 U.S.C. § 12101 *et seq* ADA.

## ALLEGATIONS REGARDING RRC PLACEMENT

Muhammad alleges that the BOP refused to transfer him to an RRC in January of 2010 and has been violating his due process rights since that time. He alleges that the due process violations occurred at both the FCI-Butner and at FMC-Lexington, but he does not specify what

2

RRC decisions were made at which facility. Since he states that he was transferred to FMC-Lexington only in April of 2010, it is logical to assume that the complained-of actions (denial of RRC placement) happened, at least in large part, while he was confined FCI-Butner.

Muhammad provides no information about the nature or length of his current federal sentence; his projected or actual release date; or what amount of time, if any, the BOP has approved for him to spend in an RRC. While the submission is not a model of clarity, Muhammad indicates that based on an unidentified psychological evaluation, the BOP has denied him *any* RRC placement.[2]

Muhammad alleges that ". . .all inmates are intitled [sic] to pre-release halfway house, me more than others. I have no place to live when I get out and am technically being forced to the street." R. 2, p. 2. While Muhammad cites no legal authority on this point, he may be relying on the Second Chance Act of 2007, "the Second Chance Act," 18 U.S. C. § 3624(c), which requires BOP staff to review inmates for halfway house placement 17-19 months before their projected release dates and to consider inmates for such placement using the five factors listed in 18 U.S.C. § 3621(b).

---

[2]

Specifically, Muhammad states as follows:

My denial was based on a Psychological evaluation that was later denied because I no longer saw them at all and was never having any problems as I have now reviewed my Psychology records. . . and I was deemed normal since 10/28/09 yet and still I was being denied Residential Re-entry of the Bureau of Prisons.

R. 2, p. 3.

Muhammad claims to have completed the BOP's administrative exhaustion procedures set forth in 28 C.F.R. § 542.15 (a)-(b),[3] but he neither provided specific dates on which he took those steps nor attached supporting documentation of his efforts. What information he did provide is confusing. For instance, Muhammad states that he received no administrative response from the "Central Regional Office," but it unclear whether he meant that the BOP's Mid-Atlantic Regional Office ("MARO") or the BOP's Central Office in Washington, D.C., or both offices, failed to respond to his alleged administrative appeals.

In yet another conflicting passage, Muhammad states that he has written the "Director's Office" three times requesting a response to his remedy. It is unclear whether he means the MARO Director or the BOP Director; whether he wrote an informal letter; or whether he pursued the BOP's specific exhaustion procedures. Regardless, Muhammad's meager exhaustion allegations do prevent dismissal of either facially frivolous claims or claims which fail to state a claim upon which relief can be granted. 42 U.S.C. § 1997(e)(c)(2); *see also Hudson v. DeForest*, 2:09-CV-11245, 2010 WL 1141609, at *3 (E.D. Mich. March 24, 2010).

DISCUSSION
1. Claims for Damages under *Bivens*

A claim must state sufficient factual matter which, if accepted as true, would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Dismissal for failure to state a claim is warranted where the complaint pleads facts that are "merely consistent with" a defendant's

---

[3] These steps consist of: (1) filing a BP-9 Request for Administrative Remedy with the Warden; (2) if dissatisfied with the Warden's response, filing a BP-10 appeal with the BOP Regional Director within 20 days, and (3) if dissatisfied with the Regional Director's response, filing a BP-11 appeal with the Office of General Counsel within 30 days.

liability. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). For various reasons, the Court will dismiss, for failure to state a claim upon which relief can be granted, all of Muhammad's *Bivens* claims seeking monetary damages from the named defendants.[4]

### A. Claims Against the BOP

The doctrine of sovereign immunity bars any claim for damages against he BOP. Under that doctrine, federal courts do not have jurisdiction to consider actions for monetary damages against the United States unless sovereign immunity has been waived. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Congress has not waived sovereign immunity for constitutional torts. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994).

Because the principle of sovereign immunity applies equally to agencies of the United States, its agencies are also immune from suit in the absence of a waiver of sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993). As an agency of the United States, Muhammad cannot recover damages against the BOP under *Bivens*. Muhammad's claims for damages against the BOP will be dismissed dismissed with prejudice for failure to state a claim upon which relief can be granted.

### B. Claims Against Hickey, Stephens, and Lappin

A plaintiff must plead that each government official-defendant, through his or her own actions, has violated Constitution. *Ashcroft*, 129 S.Ct. at 1948. Defendants without personal involvement or participation in allegedly unconstitutional acts must be dismissed. *Rizzo v.*

---

[4] To state a cognizable *Bivens* claim, the plaintiff must plead two essential elements. First, he must show that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Bivens*, 403 U.S. at 397.

*Goode*, 423 U.S. 362 (1976). The Sixth Circuit has also held that a plaintiff must demonstrate that the defendant was "personally involved" in the alleged constitutional violations. *Bennett v. Schroeder*, 99 F. App'x. 707, 712-13 (6th Cir. 2004); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998);*Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

Muhammad alleges that some of the actions leading to the decision to deny him RRC occurred at FCI-Butner and that some of them occurred at FMC-Lexington. He did not enumerate which alleged actions occurred at FMC-Lexington and which occurred at FCI-Butner. Since he states that he was recently transferred to FMC-Lexington in April of 2010, it is logical to assume that some of his RRC decisions were made at FCI-Butner.

Muhammad does not specify what, if any, direct involvement Hickey, Lappin, or Stephens allegedly had in the decisions concerning his RRC placement, *i.e.*, decisions to deny him any RRC placement, or decisions to place him an RRC closer to his October, 2010, release date. Simply put, Muhammad has failed to specifically articulate how any of these defendants violated his constitutional rights. *Ashcroft*, 129 S.Ct. at 1948.

Even assuming that Muhammad's claims against Hickey, Stephens, and Lappin stem from their denial of his remedy requests and/or appeals during the administrative remedy process, those claims would still lack merit. *Bivens* liability may not be imposed simply because a supervisor denies an administrative grievance or fails to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Therefore, any claims for damages against Hickey, Stephens, and Lappin on this construed basis must be dismissed for failure to state a claim upon which relief can be based.

Further, assuming that Stephens' alleged actions, if any, occurred at FCI-Butner, Muhammad's constitutional claims against him would fail for yet another reason. A court cannot exercise personal jurisdiction over a defendant unless two conditions are satisfied: (1) the exercise of personal jurisdiction must be authorized by the forum state's long-arm statute; and (2) the exercise of personal jurisdiction must comport with constitutional due process. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Courts sitting in Kentucky, however, can collapse the entire analysis into the second prong since the extent of personal jurisdiction allowed by Kentucky's long-arm statute is coterminous with the extent allowed by due process. *See Cummings v. Pitman*, 239 S.W.3d 77, 84-85 (Ky. 2007).

An exercise of personal jurisdiction comports with due process when three requirements are satisfied: First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Air Prods. & Controls, Inc.*, 503 F.3d at 550 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Muhammad alleges no facts linking Stephens to Kentucky, under either of these criteria. This Court lacks personal jurisdiction to entertain *Bivens* damages claims against Stephens.

Muhammad fails to assert a valid constitutional claim on the merits for a final reason. The Second Chance Act requires the BOP to "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under

7

conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c).[5]

Contrary to Muhammad's assertion that all inmates are entitled to RRC placement for one year, the Second Chance Act does not guarantee a one-year RRC placement, but only directs the BOP to *consider* placing an inmate in a RRC for up to the final twelve months of his or her sentence. *Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir.2009) (emphasis added); *Harris v. Hickey*, No. 10-CV-135-JMH, 2010 WL 1959379, at *3 (E.D. Ky. May 17, 2010). "Although RRC placement is helpful for readjustment to society, a federal prisoner does not have a federal right to serve the final twelve months of his sentence in a RRC." *Goosby v. Shartle*, No. 10-CV-0806, 2010 WL 2545344, at *2 (N.D. Ohio June 17, 2010).

Due process rights are triggered only upon the deprivation of a legally cognizable liberty interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003). Since Muhammad has no liberty interest in RRC placement- only in the BOP's *consideration* of his placement based on the five enumerated criteria- he had no right to any form of "due process" in connection with the BOP's decisions about his RRC placement.

Finally, Muhammad has not alleged that he suffered any physical injuries as a result of being denied RRC placement; he claims only that he has suffered emotional distress. An inmate

---

[5] Pursuant to the administrative regulations accompanying the Second Chance Act, the decision to place an inmate in pre-release community confinement is discretionary and will be "determined on an individual basis" according to the factors in 18 U.S.C. § 3621(b). *Rules and Regulations, Department of Justice, Bureau of Prisons*, 73 Fed. Reg. 62,440, 62,441-42 (Oct. 21, 2008). These factors include: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence; and (5) any pertinent policy statement issued by the Sentencing Commission. *See* 18 U.S.C. § 3621(b).

may not seek damages for emotional distress or mental suffering without showing a prior physical injury. 42 U.S.C. § 1997e(e); *Mitchell v. Horn*, 318 F.3d 523, 533 (3rd Cir. 2003); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). Muhammad's claims alleging emotional distress therefore lack merit and will be dismissed for failure to state a claim for relief.

2. Request for RRC Placement Under 28 U.S.C. § 2241

Muhammad's habeas request, under 28 U.S.C. § 2241, for immediate placement in an RRC must also be denied. Federal prisoners must exhaust their administrative remedies prior to filing a habeas petition under § 2241. *Fazzini v. Northeast Ohio Corr. Center*, 473 F.3d 229, 231 (6th Cir. 2006); *Little v. Hopkins*, 638 F.2d 953, 953-54, (6th Cir. 1981). This Court has held that inmates must administratively exhaust RRC placement claims asserted under the Second Chance Act. *See Simmons v. Zuercher*, No. 09-00049-ART (E.D. Ky. October 20, 2009), R. 7, p. 7; *Sommerville v. Dewalt*, No. 09–00068-KKC, 2009 WL 1211158, at *3 (E.D. Ky., May 1, 2009); and *Johnson v. Hogsten*, No. 09-00082-GFVT (E.D. Ky. April 15, 2009), R. 7, p. 4.

Muhammad may have properly completed the administrative remedy process but his vague and confusing explanation of his efforts fail to convince the Court that he did.[6] If Muhammad wishes to clarify his efforts and file a new § 2241 petition seeking immediate RRC placement prior to his October, 2010, release date he may do so, but his § 2241 claims in this proceeding will dismissed without prejudice.

3. ADA and Fifth Amendment Discrimination Claims

---

[6]

Muhammad states that he has been confined in the Segregated Housing Unit since his transfer to FMC-Lexington, and that he has been denied access to his legal materials during this time.

Muhammad alleges a discrimination claim under the ADA claim, stating only in broad terms that the defendants discriminated against him by denying him halfway house placement. The ADA is a statutory scheme enacted to protect disabled individuals from employment discrimination. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996) (listing the five elements which an ADA claimant must allege, including but not limited to the allegations that he or she is disabled; that he or she is otherwise qualified for the job with or without "reasonable" accommodation; and that he or she suffered an adverse employment decision). Because the instant Complaint does not allege employment discrimination issues, Muhammad states no claim under the ADA.[7] Muhammad's ADA claim is facially frivolous and will be dismissed as such.

Muhammad's discrimination claims also fails under the Equal Protection Clause of the Fifth Amendment. The Equal Protection Clause does not prohibit the government from treating different groups of persons in different ways, it merely prohibits the government from doing so arbitrarily or for a legally-impermissible reason. Prisoners are not a suspect classification entitled to strict scrutiny, *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). Lacking that classification, an equal protection claimant must demonstrate not only that he was treated differently from others similarly situated but that the different treatment was not rationally

---

[7] Even assuming that the ADA applied (which it does not), to be considered "disabled," under the ADA, the claimant must have a permanent or long-term physical or mental impairment which substantially limits a major life activity, meaning that the impairment prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 194-96 (2002). Muhammad alleges no impairment of a major life activity, only that he ". . . stood strong through my great Aunt's murder trial," R. 2, p. 4, and that he has generally suffered emotional distress.

related to a legitimate government interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).

Muhammad does not allege that others similarly situated to him were treated differently regarding RRC placement. Further, RCC placement decisions are rationally related to the legitimate government interest of ensuring that the BOP be allowed to exercise its discretion under the specific guidelines of the Second Chance Act. As Muhammad asserts no valid discrimination claim under the Equal Protection Clause of the Fifth Amendment, this construed claim will also be dismissed for failure to state a claim for which relief can be granted.

## CONCLUSION

The Court being sufficiently advised, it is **ORDERED** as follows:

1. The Clerk of the Court is directed to change the CM/ECF docket sheet to reflect that Defendant/Respondent "Harley Lampins" is actually "Harley Lappin."

2. Muhammad's Fifth Amendment constitutional claims for damages, asserted in his 8 U.S.C. § 1331 civil rights Complaint, R. 2, are **DISMISSED WITH PREJUDICE**.

3. Muhammad's 28 U.S.C. § 2241 habeas corpus claim, seeking immediate placement in an RRC, is **DISMISSED WITHOUT PREJUDICE**.

4. Muhammad's ADA and Fifth Amendment discrimination claims are **DISMISSED WITH PREJUDICE**.

5. The Court will enter a separate Judgment.

This the 10th day of August, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

11